IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIAM PATRICK FLOYD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:10-00924-JFA -JRM |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT STEVENSON, | ) | **REPORT AND RECOMMENDATION** |
| WARDEN BROAD RIVER, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, William Patrick Floyd ("Floyd"), is an inmate at the South Carolina Department of Corrections serving a sentence of 35 years imprisonment for murder, plus a concurrent 5 year sentence for possession of a firearm during a crime of violence. Floyd filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on April 21, 2010. Respondent filed a return and motion for summary judgment on August 18, 2010. Because Floyd is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on August 26, 2010 advising him of his responsibility to respond to the motion for summary judgment. Floyd filed a response on October 6, 2010.

**Background and Procedural History**

The South Carolina Court of Appeals summarized the facts produced at trial in affirming Floyd's conviction:

> In 1996, Floyd, a Texas native, moved to Charlotte and began working at Westport Container, where he met Andy Guyton and Mike Stafford. The three

became friends and, in October 1998, signed a one-year lease on a house in Rock Hill, South Carolina.

In December 1998, Guyton and Stafford had a fight. Although Floyd was asleep when the fight began, he awoke during the commotion and broke up the altercation. Guyton subsequently moved out, but later overcame his difficulties with Stafford and frequently visited the house.

Stafford was in a band with Mark Hinson, their next-door neighbor, and Doug Throckmorton. On August 14, 1999, the band was practicing at Hinson's house. Floyd and Guyton were drinking and went back and forth from Floyd's house to Hinson's house to watch the band practice. During the evening, Guyton noticed Floyd was drunk and saw Floyd fall down the back steps. After Floyd got up, Guyton observed him walk back to his home. Shortly thereafter, Guyton heard several gunshots fired from Floyd's back porch.

After the band stopped practicing, Guyton and Throckmorton decided to go to a local store to purchase beer and cigarettes. Stafford went back to his house. When Guyton and Throckmorton returned from the store, they saw Floyd and Stafford fighting on the front lawn of the house. Guyton stated that "[Stafford] had [Floyd] pinned down and had his hand around [Floyd's] neck and he was hitting [Floyd]." Throckmorton separated Floyd and Stafford and they all entered the house. Throckmorton and Stafford went into the kitchen while Guyton stood near the entrance to the kitchen. Guyton then saw Floyd leave his bedroom with a shotgun in his hands and approach the kitchen.

Guyton backed out of the house when he saw Floyd come out of his room holding a shotgun. Throckmorton observed Floyd fire the shotgun at Stafford and saw Stafford bend over holding his stomach. Throckmorton ran outside and told Guyton that Floyd shot at Stafford. Guyton and Throckmorton and Guyton ran next door to call for help. While on the way to the neighbor's house, they heard another shot. The police subsequently arrested Floyd and charged him with murder and possession of a weapon during the commission of a violent crime.

During the trial, Floyd maintained he shot Stafford in self-defense. Floyd stated the altercation between him and Stafford began after the band had finished practicing. Stafford had come into the kitchen, and Floyd patted him on the back. Stafford accused Floyd of slapping him, which Floyd denied.

Floyd, noticing Stafford was getting angry, began looking in the house for Guyton and Throckmorton. He went out to the front porch to see if their car was in the driveway. When Floyd was on the porch, Stafford came out of the house, knocked him off the porch, immediately jumped on him, and started chocking him.

2

Floyd testified that he was too tired and drunk to fight back effectively and feared for his life because he knew that Stafford, when angry, would continue to attack with the aim of severely injuring his adversary. Although Floyd was able to remove Stafford's hands from his neck, Stafford then delivered several harsh blows to his face, causing him to black out. At some indeterminate time later, Floyd came to and, seeing the lights on inside the house, began running toward the house.

He then ran into his bedroom because it "was the natural place to go," but heard Stafford angrily mumbling nearby. Floyd claimed he, feared that Stafford would attack him again, so he grabbed a shotgun and some shells and started walking towards the foyer area of the house. When he reached the edge of the living room, about two or three feet before the foyer, he noticed Stafford running towards him from the kitchen. Stafford came within five feet of Floyd in such a way that he feared that Stafford would either attack him again or take the gun away from him. As Stafford reached out toward Floyd, Floyd fired the gun. Stafford yelled and bent over, and Floyd then began "backing up" toward his bedroom, all the time facing Stafford. About ten seconds later, Stafford started approaching him again, and when Stafford was about ten feet away, Floyd reloaded and fired again.

Stafford died at the scene. James Maynard, the pathologist for York County, conducted an autopsy on Stafford's body. He found one shotgun would in Stafford's left lower abdomen. Maynard also found shotgun pellets in Stafford's back right shoulder. Maynard tested Stafford's body for consumption of alcohol and determined his blood alcohol level was 0.22. Maynard testified he found burning, stippling, gunpowder residue, and wadding at the site of the shotgun wounds, indicating both shots were fired at fairly close range.

State v. Floyd, Unpub.Op.No. 2003-UP-705 (Ct.App., filed Dec. 9, 2003) (App. 730).

Floyd was found guilty by a jury on May 17, 2000. He was represented at trial by Jack Swerling, Esquire. Mr. Swerling continued to represent Floyd on direct appeal. He raised the following issues:

I. Did the trial judge err in excluding testimony of the circumstances and details of the December 1998, incident?

II. Did the trial judge err in refusing to allow Counsel for Appellant to cross-examine Andy Guyton and Doug Throckmorton regarding the victim's character and reputation for violence and Appellant's character and reputation for peacefulness and tranquility?

3

III. Did the trial judge err in excluding medical records and expert testimony reflecting Mike Stafford's relevant diagnosis and history of treatment?

IV. Did the trial judge err in excluding testimony regarding Mike Stafford's "NO FEAR" tattoo?

V. Did the trial judge err in allowing the Solicitor to inquire of Appellant regarding matters whose unfairly prejudicial effect outweighed the probative value?

VI. Did the trial judge err in erred [sic] excluding Appellant's testimony regarding Mike Stafford's statement of his fighting strategy?

VII. Did the trial judge err erred [sic] in excluding evidence of the interdependent relationship between Appellant and Mike Stafford and evidence of the lack of animus on the part of Appellant?

VIII. Did the trial judge err in sustaining the State's objection to Counsel for Appellant's question of Andy Guyton regarding why he did not move back in with Stafford and Appellant?

IX. Did the trial judge err in refusing to charge the jury Appellant's Request to Charge #12?

X. Did the trial judge err in submitting a charge on voluntary intoxication over the objection of Appellant?

After the conviction was affirmed by the South Carolina Court of Appeals, Mr. Swerling filed a petition for rehearing which was denied. Floyd sought further review by filing a petition for writ of certiorari in the South Carolina Supreme Court raising the following issues:

1. Did the Court of Appeals err affirming the trial judge's erroneous exclusion of testimony of the details of the December 1998 incident which were critical to Floyd's claim of self-defense and admissible under the South Carolina Rules of Evidence and the precedent of this Court?

2. Did the Court of Appeals err in affirming the trial judge's erroneous exclusion of Floyd's cross-examination of the State's witnesses regarding character and reputation.

4

3. Did the Court of Appeals err in holding that the exclusion of medical records and expert testimony reflecting Mike Stafford's relevant diagnosis was proper?

4. Did the Court of Appeals err in affirming the trial judge's exclusion of testimony regarding Mike Stafford's "NO FEAR" tattoo?

5. Did the Court of Appeals err in affirming the trial judge's exclusion of Floyd's testimony regarding Mike Stafford's statement of his fighting strategy?

6. Did the Court of Appeals err in affirming the trial judge's exclusion of evidence of the interdependent relationship and evidence of Floyd's lack of animus toward Stafford?

7. Did the Court of Appeals err in affirming the trial judge's exclusion of Floyd's question of Andy Guyton during cross-examination regarding why he did not move back in?

8. Did the Court of Appeals err in affirming the trial judge's erroneous refusal to charge the jury Floyd's Request to Charge #12?

9. Did the Court of Appeals err in affirming the trial judge's erroneous submission of a charge on voluntary intoxication to the jury over the objection of Floyd?

The Supreme Court denied the petition for writ of certiorari on July 21, 2005. The Remittitur was returned on July 26, 2005.

Floyd filed a *pro se* application for post-conviction relief ("PCR") on March 1, 2006. (App. 748). An evidentiary hearing was held on October 9, 2007. Floyd elected to proceed *pro se*. (App. 787). The PCR court issued an order of dismissal on March 6, 2008. (App. 869). Floyd's motion to alter or amend the judgment (App. 878) was denied on April 11, 2008. (App. 890). Floyd filed a *pro se* petition for writ of certiorari in the South Carolina Supreme Court raising the following claims:

1. Did the circuit court err in holding that petitioner's appellate counsel was not ineffective for failing to raise on appeal that the "permissive

> inference of malice from the use of a deadly weapon" lessened the burden of proof on the State, inadequately directed the jury's deliberations, and improperly intruded on the fact-finding process?

2. Did the circuit court err in holding that petitioner's appellate counsel was not ineffective for failing to raise and argue on appeal the trial judge's "selfdefense is not available to a person who uses such language so derogatory as reasonably calculated to bring on difficulty" jury charge. (App. p. 552). The charge was unsupported by the evidence and may well have misled the jury into deciding the petitioner was not entitled to plead self-defense?

3. Did the circuit court err in holding that trial counsel was not ineffective for failing to object and preserve for appellate review the "permissive inference of malice from the use of a deadly weapon," jury instruction; lessened the burden of proof on the state; misguided the jury's deliberations; and improperly intruded on the fact finding process?

4. Did the circuit court err in holding that trial counsel was not ineffective for failing to object to and preserve for appellate review, as being unsupported by the evidence, that the trial judge's charge that, "self-defense is not available to a person who uses such language so derogatory as reasonably calculated to bring on difficulty." (App. p. 552). The charge was unsupported by the evidence, and may well have misled the jury into deciding the Petitioner was not entitled to plead self-defense.

The petition was transferred to the South Carolina Court of Appeals which denied certiorari on March 3, 2010. The Remittitur was returned on March 19, 2010.

## **Grounds for Relief**

In his present petition, Floyd asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Appellate attorney was ineffective for failing to raise on appeal that the "Inference of malice from the use of a deadly weapon" was unconstitutional.

Supporting Facts: The trial judge instructed the jury that to "use, employ, or handle a deadly weapon as to endanger the life of

another or others, without just cause or excuse, is sufficient to raise an inference of malice." (trial page 545). The inference violates the Due Process Clause because the prosecution has to prove the absence of heat of passion upon provocation beyond a reasonable doubt. The petitioner was choked and beaten while he was in a helpless state (trial page 155). The petitioner shot the decedent because he was afraid of being attacked again.

**Ground Two:** Appellate counsel was ineffective for failing to raise on appeal jury charge concerning "self-defense not available to person using derogatory language."

Supporting Facts: Appellate counsel was ineffective for failing to raise on appeal the trial judge's "self-defense is not available to a person who uses such language so derogatory as reasonably calculated to bring on the difficulty" jury charge. (Trial page 552). There was no evidence the petitioner made any derogatory remarks in the time immediately before the altercation. The petitioner and decedent were alone at the time the altercation happened and the petitioner fervently denied saying anything to provoke a fight. (trial page 466). The faulty charge may have misled the jury.

**Ground Three:** The Trial Judge committed reversible error in excluding critical details of a prior incident of violence on the part of the victim relevant to self-defense.

Supporting Facts: The decedent made a violent attack on the petitioner's roommate a few months before the shooting. Defense counsel was not allowed to ask state witness Andy Guyton about how decedent pursued Andy Guyton and continued to beat him. Also, was not Allowed to ask about Hole in the Wall that decedent pushed Andy Guyton through, about how Doug Throckmorton had to fire a gun to calm decedent down and how petitioner had to break up prior fight.

**Ground Four:** The Trial Judge committed Reversible Error in excluding medical records and Expert testimony Reflecting decedent's Relevant diagnoses and traits.

7

| | |
|---|---|
| Supporting Facts: | Floyd was prohibited from showing medical records, and offering the expert opinion of Dr. Morgan, which showed the decedent had a character trait for extreme violence when intoxicated. It was the opinion of Dr. Morgan that Stafford's condition would worsen and continue indefinitely without treatment. Floyd wanted to admit this evidence to show that his fear of the decedent was reasonable and that Stafford was the more likely aggressor. |
| **Ground Five:** | The trial judge committed reversible error in issuing a charge on voluntary intoxication over objection. |
| Supporting Facts: | The petitioner was unable to defend himself from a violent attack by the decedent due to his extreme intoxication. The police said the petitioner had a strong odor of alcohol on him (trial page 111), and had to be assisted in walking to the police car (trial page 122). Floyd never argued that his intoxication robbed him of his ability to know what he was doing; and never suggested that his intoxication was a defense to a murder charge. Instead, he argued that his intoxication was relevant to reasonableness of his fear of Stafford in support of the actual defense raised – self-defense. The trial judge's charge that intoxication is "never" a legal defense quite likely confused and misled the jury into disregarding any defense which referenced the fact of intoxication, including Floyd's proffered [sic] defense of self-defense. |
| **Ground Six:** | Trial counsel was ineffective for failing to adequately object and preserve for appellate review the trial judge's jury instruction concerning the "inference of malice from the use of a deadly weapon." (trial page 545). |
| Supporting Facts: | The trial attorney objected to the "inference of malice from the use of a deadly weapon" because it was a burden shifting instruction, which lessened the burden on the state. Petitioner argues that trial attorney should have preserved the issue better by also stating the inference misguided the jury's deliberations and improperly intruded on the fact-finding process. This |

|             | issue if properly preserved would have been a reversible error on direct appeal. |
|---|---|
| **Ground Seven:** | Trial counsel was ineffective for failure to properly object and preserve for appellate review, trial judge's jury charge that "self-defense is not available to a person who uses such language so derogatory as reasonably calculated to bring on difficulty" (trial page 552). |
| Supporting Facts: | Trial counsel objected to the charge on the basis that "words alone are never enough to warrant an assault" (trial page 558). The real reason the charge should not have been given is because there was no evidence to suggest the difficulty was caused by derogatory words. Trial counsel's inability to adequately object and preserve this issue for appellate review constitutes ineffective assistance of counsel. |

## **Discussion**[1]

Since Floyd filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1]Respondent concedes that Floyd's petition is timely and his claims are properly exhausted.

9

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

**1. Ineffective Assistance of Counsel**

Mr. Swerling represented Floyd at trial and on direct appeal. Floyd asserts that Mr. Swerling was ineffective in both aspects of his representation.

a. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective

assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct... the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams

v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Floyd asserts that Mr. Swerling was ineffective for failing to object and, thus, preserve for appellate review, two portions of the trial court's jury instructions. The first portion of the court's instruction deals with the inference of malice from the use of a deadly weapon. The second portion is the court's instruction that self defense is not available to a person who uses language so derogatory that it is reasonably calculated to bring on the difficulty.

(a) Malice Instruction (Ground 6)

Under South Carolina law murder is defined as "the killing of any person with malice aforethought either express or implied." S.C.Code Ann. § 16-3-10. *See* (App. 543). In explaining the concept of malice to the jury, the trial court stated the following:

> The law says that if one intentionally kills another with a deadly weapon, the inference of malice may arise.
>
> A deadly weapon is any object or substance which reasonably could be used to cause bodily harm or death.
>
> Malice may be inferred through the use of a deadly weapon. You, the jury, are permitted to infer malice from the conduct of the Defendant in the use of handling of a deadly weapon, if such conduct resulted directly in the death of another and if such conduct was so inexcusable, so aggravated or grossly reckless as to show an actual, intentional disregard of the consequences to human life.
>
> A conduct sufficient to show a deliberate intentional design to use, employ or handle a deadly weapon as to endanger the life of another or others, without just cause or excuse, is sufficient to raise an inference of malice.
>
> If facts are proved beyond a reasonable doubt sufficient to raise the inference of malice, if any, in the use of a deadly weapon to your satisfaction, this inference would simply be an evidentiary fact to be taken into consideration by you, along with all the other evidence in the case bearing upon the issue of malice.

(App. 544-545).

The record shows that Mr. Swerling objected to the instruction arguing that "the inference of malice" amounts to "a burden shifting instruction, lessening the burden on the State." (App. 558). Floyd contends that counsel "should have preserved the issue better by also stating the inference misguided the jury's deliberations and improperly intruded on the fact finding process." (Petition).

For years the law in South Carolina and other states was that the use of a deadly weapon in a homicide created a rebuttable presumption that the defendant acted with malice. In a series of cases, the United States Supreme Court ruled that such instructions shifted the burden of proof to the defendant, and, thus violated due process.[2] These decisions led to instructions that allowed jurors to draw a permissible inference that the use of a deadly weapon was accompanied by malice. *See* State v. Elmore, 279 S.C. 417, 308 S.E.2d 781 (1983). Such instructions pass constitutional muster.

Floyd's argument is without merit. He merely speculates that the standard present-day malice instruction given by the trial court may have misguided the jury.

                (b) Self-Defense (Ground 7)

Mr. Swerling's trial strategy was that Floyd acted in self-defense. In defining this area of the law, the trial court instructed the jury that "(s)elf defense is not available to a person who uses such language so derogatory as reasonably calculated to bring on difficulty." (App. 552). Again, the record shows that Mr. Swerling took exception to the charge. (App. 558). Floyd argues that the proper objection should have been that "there was no evidence to suggest the difficulty was caused by derogatory words." (Petition). Floyd does not argue that this instruction was not a correct statement of South Carolina law or that it was not constitutionally sufficient.

---

[2]*See* In re Winship, 397 U.S. 358 (1970); County Court of Ulster County v. Allen, 442 U.S. 140 (1979); Sandstrom v. Montana, 442 U.S. 510 (1979); and Francis v. Franklin, 471 U.S. 307 (1985).

The record shows that Mr. Swerling took exception to both the instructions about which Floyd now complains. The PCR court's finding that counsel was not ineffective on these claims was not contrary to or an unreasonable application of the Strickland test.

## 2. Ineffective Assistance of Appellate Counsel (Grounds 1 and 2)

Floyd also argues that Mr. Swerling was ineffective for failing to raise the alleged improper malice and self-defense instructions on direct appeal.

The right to effective assistance of counsel extends to direct appeal. Evitts v. Lucey, 469 U.S. 387 (1985) and Pennsylvania v. Finley, 481 U.S. 551 (1987). The Strickland test stated above applies equally to claims of ineffective assistance of appellate counsel, i.e., a petitioner must show error and prejudice.

Floyd cannot satisfy Strickland's prejudice prong. To do so, he must show "a reasonable probability that, but for counsel's unreasonable failure..., he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000) (citation omitted). "Counsel's strategic decision to selectively brief and argue what, in his professional judgment, were [Petitioner's] strongest claims does not render counsel constitutionally deficient under Strickland." Fitzgerald v. Greene, 150 F.3d 357, 369 (4th Cir. 1998), *cert. denied* 525 U.S. 956 (1998), citing Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). *See also* Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). The task of appellate counsel is to examine the record, and in his professional judgment select the strongest issues for appeal. Counsel is not required to raise all non-frivolous issues on appeal. *Id.* at 164.

The PCR court noted that Mr. Swerling is a "particularly experienced appellate counsel" and found his explanation that both the charges in question "reflected the law of South Carolina and that

14

there were much stronger issues on appeal." (App. 875). The findings of the PCR court were not contrary to or an unreasonable application of the Strickland test.

### 3. Trial Error (Grounds 3, 4, and 5)

Floyd asserts that the trial court erred on two evidentiary issues (Grounds 3 and 4) and committed error in charging South Carolina law that voluntary intoxication is not a defense (Ground 5). Respondent asserts that these claims are not cognizable because they involve issues of state law which should not be considered by a federal court. "Under 28 U.S.C. § 2241, a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37 (1984). The statute specifies that a prisoner is entitled to a writ of habeas corpus when he is in custody "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241.

The Supreme Court reaffirmed this understanding of § 2241 in the case of Lewis v. Jeffers, 497 U.S. 764 (1990). "Because federal habeas corpus relief does not lie for errors of state law . . ., federal habeas review of a state court's application of [state law] is limited." In Estelle v. McGuire, 502 U.S. 62 (1991), the Court reiterated,

> [W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* (Citations omitted).

Unless the petitioner can point to a specific constitutional protection which was denied him, or show that the error in state law substantially impaired his trial's fairness or resulted in a complete miscarriage of justice, he may not obtain relief, Chance v. Garrison, 537 F.2d 1212 (4th Cir. 1976), citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

15

These claims were asserted as violations of state law and procedure in the state appellate process. They were rejected by the courts of South Carolina. Floyd does not raise violations of the United States Constitution in these claims, and, therefore, even if he could show a violation of state law, he would not be entitled to relief in this Court.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

November 30, 2010

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).